IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TIM HUTER,**

    **Plaintiff,**                              **Case No. 2:13-cv-0351**
                                         **JUDGE GREGORY L. FROST**
**v.**                                         **Magistrate Judge Norah McCann King**

**SKYLINE CHILI, INC.**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Skyline Chili, Inc.'s ("Skyline") motion for summary judgment (ECF No. 21), Plaintiff's memorandum in opposition (ECF No. 25), and Skyline's reply memorandum (ECF No. 31). For the reasons that follow, the Court **GRANTS** the motion and awards summary judgment in Skyline's favor.

**I.    BACKGROUND**

Plaintiff Tim Huter, a Caucasian male, alleges that Skyline fired him because he is Caucasian. The following facts are relevant to this dispute.

In early 2012, Jeremy Swallow (a Caucasian male) was a director of operations at Skyline. Joe Dominiak (a Caucasian male) was a vice president of operations. After consulting with Dominiak, Swallow hired Plaintiff as a district manager for the Columbus, Ohio area. Plaintiff's employment with Skyline began on February 6, 2012.

At that time, Myong Hunkins (a Korean female) was a market manager for the Columbus region. Todd Tuller (a Caucasian male) was a city manager for that region. From top to bottom, the hierarchy went: vice president of operations (Dominiak), director of operations (Swallow), market manager (Hunkins), district manager (Plaintiff), city manager (Tuller), and the general

managers of each individual store.  Plaintiff acknowledged that he reported to Hunkins, who reported to Swallow.

Despite acknowledging the hierarchical structure, however, Plaintiff testified that the roles were fuzzy and ill-defined.  Plaintiff's testimony suggests that he did not understand the hierarchy at the time he was hired but eventually came to understand it.  *See* ECF No. 20-1, at 22–23.

Because Plaintiff spends most of his brief comparing his role to Hunkins' role, a brief description of Hunkins and her position is warranted.  Hunkins is, as stated above, a Korean-American female.   In July 2009, Skyline made Hunkins a district manager responsible for ten stores in the Columbus region.  Hunkins was promoted to market manager in November 2010.  Hunkins testified that, after she was promoted (thereby leaving a district manager vacancy), she continued to perform the same functions as a district manager for the stores that did not have one.  As market manager, however, Hunkins also had "overarching supervisory responsibilities for the entire Columbus market."  (*Id*. at 22).  Plaintiff acknowledged in his deposition that the market manager position had broader responsibilities than the district manager position.

Plaintiff asserts that Hunkins was not meeting performance goals in her position as market manager.  Plaintiff states that he was hired "in an attempt to restructure the Columbus market and release the underperforming Hunkins."  (ECF No. 25.)  Plaintiff further suggests that Skyline could not afford three managers in the Columbus region and that Skyline hired him with the knowledge that one of the other managers (Tuller or Hunkins) would have to go.

Shortly after being hired, Plaintiff began to receive training at Skyline's Polaris location.  That training paralleled the district manager training Hunkins had received years earlier.  As part of Plaintiff's training, he was expected to shadow Hunkins and learn from her.

2

Plaintiff acknowledged that he had some personality conflicts with one of the general managers (Vernon Greene) at Skyline's Polaris location. After two separate incidents in which Greene believed Plaintiff overstepped his bounds, he (Greene) emailed Hunkins to convey his frustration with Plaintiff. That email, dated April 28, 2012, states that Plaintiff failed to make a connection with the staff and the general managers. Plaintiff was relocated to finish his training at a different Skyline location.

The April 28, 2012 email prompted Swallow to meet with Plaintiff. Plaintiff testified that, during the meeting, Swallow "expressed concerns that I wasn't having enough fun and needed to be more part of the group than to try to be in a managerial leadership position." (ECF No. 20-1, at 32.)

The April 28, 2012 email also prompted Hunkins to meet with Plaintiff. Plaintiff acknowledged that his relationship with Hunkins was "chilly" and that he was concerned about her ability to run the Columbus market.

Following the meeting, on May 16, 2012, Hunkins emailed Swallow and Skyline's then-Human Resources Director Shari Bleuer to express her concerns about Plaintiff's ability to get along with other Skyline employees. Hunkins stated that Plaintiff appeared to have little respect for her and her ability to run the Columbus market. Notably, before this time, Bleuer had independently sent her own email to Dominiak expressing her concerns about Plaintiff's ability to fit in with the other employees.

The same day Hunkins sent her email to Swallow and Bleuer, Dominiak emailed Skyline President Kevin McDonnell. In that email, Dominiak stated that he was "supporting [Swallow] in the following next steps[:] Remove [Plaintiff] from Skyline based on the fact that he has little

3

to no chance of being successful in Columbus. This is a combination of his DNA and Myong unwillingness [sic] to foster and support him." (ECF No. 25-3, at 1.)

Two days later, on May 18, 2012, Swallow emailed Dominiak about Plaintiff. Swallow stated that both he and Hunkins "have come to a decision on the direction we need to go regarding [Plaintiff] and we both believe that it is in all parties [sic] best interest for us to terminate his employment at this time." (ECF No. 20-1, at 123.) Swallow stated that "Tim is simply not a cultural fit" and listed the following four points:

- He has not demonstrated the ability or willingness to put forth the effort to make connections with Myong, Todd and the entire Columbus management team.
- There is a big disconnect on how to communicate on a basic level with the people around him to include his peers and subordinates to demonstrate empathy and compassion
- Tim has been placed in a restaurant for the past 2 months to demonstrate that he can perform the basic duties of a unit level restaurant manager and during this time he has failed to demonstrate an effort to want to interact with our guests and in fact shy's [sic] away from this
- Tim has also verbally and non-verbally demonstrated a dislike for our processes here at Skyline Chili-i.e. our RJP process and our Crew Level Training program

(*Id*.)

On May 21, 2012, approximately four months after he was hired, Swallow and Bleuer met with Plaintiff to inform him that his employment was terminated. The stated reason for termination was "people fit" issues. (ECF No. 20-1, at 124 (termination letter signed by Swallow)). There was no reference to Plaintiff's race during the meeting or in the termination letter. Plaintiff does not assert that anyone made any reference to his race at any time during his brief employment with Skyline.

4

Plaintiff filed a complaint against Skyline on April 15, 2013 alleging that Skyline fired him because he is Caucasian. Plaintiff brings claims for race discrimination under Title VII of the United States Code, 42 U.S.C. § 2000e and Title 4112 of the Ohio Revised Code.[1]

Skyline now moves for summary judgment on Plaintiff's claims. That motion is fully briefed and ripe for the Court's review.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

---

[1] Plaintiff also brought a third claim for promissory estoppel but subsequently dismissed that claim.

that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234–35 (quoting *Anderson*, 477 U.S. at 251–52).

### B. Analysis

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).[2]

Where, as here, no direct evidence of discrimination exists, a plaintiff must prove his or her claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See, e,g., Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). That framework is modified in reverse discrimination claims such as this one. As the Sixth Circuit explained:

> Generally speaking, a plaintiff alleging employment discrimination in employee discipline must make a four-part showing in order to set forth a prima facie case of discrimination: '1) he is a member of a protected class; 2) was qualified for the job; 3) he suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.' [*Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)]. Where, as here, a plaintiff alleges 'reverse discrimination'-that is, he is a member of the majority claiming employment discrimination-the plaintiff bears the burden of 'demonstrating that he was intentionally discriminated against 'despite his majority status.' ' *Murray v. Thistledown Racing Club, Inc*., 770 F.2d 63, 67 (6th Cir. 1985) (quoting *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C.Cir. 1983)). Accordingly, the first prong of the prima face case is adapted to require the plaintiff to prove 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.' *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (internal quotations omitted). Similarly, to satisfy the fourth prong, Plaintiff must show that the [defendant] treated differently similarly situated employees of a different race. *Id*.

---

[2] The same analysis applies to Plaintiff's discrimination claim under Title 4112 of the Ohio Revised Code. *See Fiedderman v. Daiichi Sankyo*, 930 F. Supp. 2d 899, 908 (S.D. Ohio 2013). The Court therefore considers Plaintiff's state and federal claims together.

*Id.*

In this case, it is undisputed that Plaintiff was qualified for his job and that he suffered an adverse employment action when Skyline fired him. The second and third elements of Plaintiff's prima facie case therefore are not at issue. At issue is whether Plaintiff can establish the first prong—that Skyline is the unusual employer who discriminates against the majority—and the fourth prong—that Skyline treated differently similarly-situated employees of a different race.

Regarding the first prong of the analysis, the Sixth Circuit has stated:

> This requirement is not onerous, and can be met through a variety of means, such as statistical evidence; employment policies demonstrating a history of unlawful racial considerations; evidence that the person responsible for the employment decision was a minority; or general evidence of ongoing racial tension in the workplace. Indeed, 'the mere fact that a racial minority took an adverse action' against the employee is often sufficient to satisfy the background circumstances requirement. *Leavey v. City of Detroit*, 467 Fed.Appx. 420, 425 (6th Cir.2012) (citing *Arendale*, 519 F.3d at 603).

*Johnson v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 502 F. App'x 523, 536 (6th Cir. 2012).

Regarding the fourth prong, the Court notes that only one employee relevant to this case—Myong Hunkins—is of a different race than Plaintiff. Plaintiff therefore must demonstrate that he and Hunkins were "similar in all relevant respects" and "engaged in acts of comparable seriousness" to demonstrate that he and Hunkins were similarly-situated employees whom Skyline treated differently. *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012). This Court must consider "certain factors, such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " *Fledderman v. Daiichi Sankyo, Inc.*, 930

F. Supp. 2d 899, 913 (S.D. Ohio 2013) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)).

Plaintiff's arguments regarding the first and fourth prongs of his case suffer from a fatal logical flaw. That is, Plaintiff attempts to make his prima facie case by arguing both that Hunkins was a decision-maker who took the adverse employment action against him *and* that he and Hunkins were similarly-situated employees. The Court agrees with Skyline that these positions cannot be reconciled.

If the Court were to accept Plaintiff's position that he and Hunkins were similarly-situated employees so as to satisfy the fourth prong of Plaintiff's prima facie case, then it necessarily would conclude that Plaintiff and Hunkins had similar levels of authority within Skyline's hierarchy and reported to the same supervisor (Swallow). In that case, the Court could not conclude that Hunkins was the "decision maker" with respect to Plaintiff's termination. The most Plaintiff could prove in that instance is that Hunkins' email influenced Swallow—the ultimate decision maker—to fire Plaintiff. Because Swallow is Caucasian, the fact that he took an adverse employment action against Plaintiff does not suggest that Skyline is the unusual employer who discriminates against the majority so as to support a finding of reverse race discrimination. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000) ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.").

The only additional evidence Plaintiff offers to establish the first prong of his case is that Dominiak referenced Plaintiff's "DNA" in the email to Kevin McDonnell. Plaintiff asserts, without any legal or factual support, that "[a]n individual's DNA alone determines his race, [and] while this requires an inference it seems clear that there was racial tension in the workplace and

8

it was captured in an email." (ECF No. 25, at 10.)  That argument, however, goes beyond the "reasonable inferences" to which Plaintiff is entitled at the summary judgment stage.  There is nothing about Dominiak's reference to "DNA" that invokes race or suggests a racial animus towards Caucasians.  That is especially true given the fact that Dominiak is Caucasian.

Moreover, viewing the record as a whole, the Court notes that there is no statistical evidence of unlawful race discrimination in this case.  There is no evidence of employment policies suggesting a history of unlawful racial considerations.  There similarly is no evidence of ongoing racial tension in the workplace or any conduct that would suggest discrimination against Caucasian employees; to the contrary, Plaintiff's theory of this case is that he was hired to replace and oust Hunkins (the only racial minority involved in this dispute).  Even drawing all reasonable inferences in Plaintiff's favor, the Court simply cannot infer that a Caucasian manager's reference to a Caucasian subordinate's "DNA" suggests that Skyline is the unusual employer who discriminates against the majority.  Consequently, if the Court assumes that Plaintiff and Hunkins are similarly-situated employees, Plaintiff fails to establish the first prong of his prima facie case.

Conversely, if the Court concludes that Hunkins made the decision to fire Plaintiff such that the first prong is satisfied, it cannot conclude that Hunkins and Plaintiff were similarly-situated employees.  It would make no logical sense to conclude that an employee with the authority to fire another is similar "in all relevant respects" to the employee he or she fired.  Plaintiff offers no legal authority in support of his position on this issue.

Plaintiff's argument is even less compelling in light of the evidence in this case.  Contrary to Plaintiff's position, the evidence does not support a finding that Plaintiff and Hunkins performed the same role.  The testimony instead suggests that Hunkins was promoted

from district manager (Plaintiff's position) to market manager (a position that has broader responsibilities than the district manager position). The facts that Hunkins continued to perform the district manager role in some territories immediately after her promotion and that she went through the same training as Plaintiff when she was a district manager do not suggest that the two positions are similar. And the fact that Plaintiff offered to perform additional tasks in the Cleveland market (although he was fired before he ever got a chance to perform those tasks) does not suggest that he performed the same role as Hunkins. Plaintiff's argument mischaracterizes the record in this respect.

Finally, even if there were a question about whether Hunkins and Plaintiff were similarly situated, the Court is persuaded by the recent decision in *McKinley v. Skyline Chili, Inc*., No. 1:11-CV-344, 2012 WL 352722 (S.D. Ohio Aug. 14, 2012), *aff'd*, 534 F. App'x 461 (6th Cir. 2013). In that case, a judicial officer from this District unequivocally held that a Skyline market manager was not similarly situated to a district manager, "whose duties, responsibilities, pay, and bonus potential were different from that of a Market Manager." *Id*. at *8. Although Plaintiff cites his own testimony as evidence that Skyline underwent a significant restructuring at the time of his hire in early 2012 that distinguishes this case from *McKinley*, he does not dispute that the market manager and district manager positions continued to have different duties, responsibilities, pay, and bonus potential. Plaintiff's argument on this point therefore fails.

For those reasons, the Court finds that Plaintiff cannot establish a prima facie case in support of his reverse discrimination claim. There are no genuine issues of material fact and summary judgment is proper.

The Court notes that, even if Plaintiff could satisfy his prima facie case, summary judgment is proper for an additional reason. Under the *McDonnell Douglas* burden-shifting

framework, once a plaintiff establishes a prima facie case, the burden of persuasion shifts to the employer to establish a legitimate, non-discriminatory justification for the adverse employment decision. *See, e.g., Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Skyline clearly satisfies its burden in this case: it produced evidence of complaints and concerns about Plaintiff's ability to get along with his co-workers, none of which Plaintiff disputes. Indeed, Plaintiff acknowledged that he had personality conflicts with more than one Skyline employee during his roughly four months of employment. This evidence is sufficient to satisfy Skyline's burden of persuasion and shift the burden of proof back to Plaintiff.

At this stage, Plaintiff must provide evidence suggesting that Skyline's stated reason for termination is a pretext for reverse race discrimination. *See id*. But Plaintiff failed to point to any evidence that reasonably could suggest such a finding. Most notably, Plaintiff does not dispute that all of the incidents referenced above occurred and/or that he had relationship issues with at least one general manager, the city manager below him, and the market manager above him. Plaintiff similarly does not dispute that he had to change training locations because of these relationship issues.

Plaintiff's remaining arguments regarding pretext are without merit. He suggests that Skyline's stated reason for termination is false because he did not receive any negative notes in his training notebook before he was fired, but does not offer any evidence about Skyline's typical practice with respect to employee training notebooks. Plaintiff also suggests that Swallow gave him positive feedback shortly before his termination but, in support of that statement, cites his own testimony that Swallow "expressed concerns that [Plaintiff] wasn't having enough fun and needed to be more part of the group than to try to be in a managerial leadership position" during

11

a pre-termination meeting between the two. (ECF No. 20-1, at 32.) That statement corroborates—or at least does not cast doubt upon—Skyline's stated reason for termination. Similarly, the facts that Swallow later acknowledged that Plaintiff was surprised by the termination decision, that Hunkins only provided negative feedback to Plaintiff once during his brief time at Skyline, and that Dominiak referred to Plaintiff's "DNA" as part of the problem do not suggest that Skyline's stated reason for termination is false.

In short, Plaintiff failed to present any evidence that creates a question of fact as to whether Skyline fired him because he is Caucasian. Even Plaintiff's theory of this case does not suggest race discrimination: it defies logic that a Caucasian manager would hire him in an attempt to replace a minority manager and then "turn the tables" four months later and fire him for being Caucasian. Having found that no genuine issues of material fact exist, the Court concludes that Skyline is entitled to judgment as a matter of law.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Skyline's motion for summary judgment on all of Plaintiff's claims. (ECF No. 21.) The Clerk is **DIRECTED** to enter judgment accordingly and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

 /s/ Gregory L. Frost
 **GREGORY L. FROST**
 **UNITED STATES DISTRICT JUDGE**